(No. 37191.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* BENNY FRANKLIN DAVIS, Plaintiff in Error.

*Opinion filed February 1, 1963.*

ALLAN J. NEWMAN, of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and EDWARD J. HLADIS and M. ROBERT OSTROW, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

The defendant, Benny F. Davis, was found guilty by a jury in the criminal court of Cook County of the crime of burglary and was sentenced to the penitentiary to a minimum of three and a maximum of eight years.

The following alleged errors are relied upon: (1) insufficient proof of ownership of the premises alleged to have been burglarized, (2) failure to prove defendant's guilt beyond a reasonable doubt, (3) improperly admitting evidence of the proceeds of the burglary which were not in the defendant's possession, and (4) the giving of prejudicial instructions to the jury.

The indictment alleges that the property broken into was

the office and store of John Dini and Dale Spielman, co-partners. Both partners testified as to the existence of the partnership on the basis of an oral agreement. In the case of *Bruen* v. *People,* 206 Ill. 417, this court declared that the existence of a partnership is a question of fact that may be implied from circumstances and that positive proof is not indispensable. We find the evidence as to the existence of the partnership to be both proper and sufficient.

On June 24, 1959, the partners operated a golf course in Schiller Park, Illinois. The course is bounded on the north by Irving Park Road, on the west by Willow Road and on the east by River Road. Martha Hoffmann and her husband John Hoffmann resided at the corner of Willow Road and Maria Lane. Their house is across the street from the golf course and faces Willow Road; Maria Lane is one block south of Irving Park Road. Mrs. Hoffmann testified that in the early morning on the date in question she looked out of the window and saw a car parked on Maria Lane in back of her car on their side of the street. She observed two men leaving the car and walk away. These men returned, took something out of the trunk of this car and again walked away from it. The defendant admitted that he parked this car there and left it, although he stated that he drove there alone. Mrs. Hoffmann further testified that she went downstairs and looked out of the front door and saw these two men walk across the golf course. In the vicinity of the golf shack on this course she saw flashlights and heard some pounding. She then woke her husband and he called the police. Shortly thereafter two officers, Lt. Borg and Sgt. Ellis, arrived at the Hoffmann home. These two officers, together with Mr. Hoffmann, went upon the golf course. Sgt. Ellis stated that he noticed two persons who were inside the fence of the golf course. As he started towards them they started to run across the course. He yelled for them to stop and fired two shots in the air. One tripped, and Sgt. Ellis chased him to the vicinity of

the golf shack where he had climbed over a fence. Sgt. Ellis testified that he at no time lost sight of this individual until he was apprehended. The person apprehended was the defendant.

After Sgt. Ellis had fired the shots Lt. Borg returned to the squad car and drove to the golf shack. As he pulled the squad car up he saw the defendant come from the fence around the side of the building. The two officers and Mr. Hoffmann converged on the defendant at about the same time. Certain minor discrepancies as to who actually apprehended the defendant and the failure of the officers to hear an exclamation by Mr. Hoffman warning the defendant to put his hands up are understandable and of no material consequence. A search shortly thereafter failed to reveal the whereabouts of the second man. After the lights were turned on both in the shack and on the golf course Lt. Borg noticed that everything in the shack was disturbed, and at the point where they had first seen the figure the missing golf equipment was found piled on the ground. One hour later when the partners were summoned they identified the golf equipment and stated that all of the equipment had been in the shack when they closed up the preceding midnight. The evidence established that the building had been broken into, the inside of the shack had been disturbed and the golf equipment was missing.

Defendant was the only witness who testified in his behalf. He stated that after visiting his girl friend's house in the 2100 block of Cleveland Avenue in Chicago he left for the purpose of visiting his sick brother in McHenry, Illinois. He stated that he inadvertently had passed River Road on Irving Park and turned left at the next street, parked and walked back to make a phone call. Not having any change he went beyond the phone booth towards River Road to make sure where he was. After checking his whereabouts he started back and on hearing shots and yelling he

laid down in the lane next to the highway. He stated that when he saw the police car coming he got up and walked toward it. He continually denied any guilt. The phone booth is between River Road and Willow Road and is about 25 to 30 feet off of Irving Park Road. Immediately around this booth is a parking lot and a ball park. Instead of driving into this parking lot he drove to Willow Road, turned left for one short block to Maria Lane and then in turn again turned west and parked on Maria Lane behind the Hoffmann automobile. He also stated his purpose of being present on the golf course was to relieve himself.

Defendant stated that he was alone in the car. Although all the other witnesses saw two people defendant testified that he neither heard nor saw anyone running across the golf course. Defendant himself testified to his prior conviction of armed robbery.

We have carefully reviewed the evidence in this record and find that it does confirm the jury's finding of guilt. When a defendant elects to justify or explain his presence at or near the scene of a crime, while denying participation, he must tell a reasonable story or be judged by its improbabilities. (*People* v. *Spagnolia,* 21 Ill.2d 455.) Apparently the jury here did not believe the defendant's explanation as to his presence near the scene of the burglary but, instead, chose to accept the above testimony of the Hoffmanns and the police officers. This finding will not be set aside unless a reasonable doubt as to the defendant's guilt clearly appears, which is not the situation in this case.

We are of the opinion that the admission of the golf clubs into evidence did not constitute error. Undoubtedly a burglary had taken place and these were the clubs taken from the premises. The evidence further showed that the defendant had fled from the place where the clubs were subsequently discovered. It was one of the circumstances which linked the defendant to the crime and as such was admis-

sible. The case of *People* v. *Urban*, 381 Ill. 64, cited by defendant dealt with the matter of possession of burglarious tools or implements shortly after an alleged burglary. In the *Urban* case we found that there was no other evidence which connected the defendant with the possession of the tools or connected the tools with the breaking of the premises. Such is not the case here and the introduction into evidence of the golf bag discovered near the scene of the burglary was proper. *People* v. *Panczko*, 381 Ill. 625.

The defendant urges that the giving of certain instructions denied him a fair trial. Since the record does not indicate which of the given instructions were submitted by the defendant and which by the prosecution or that any objections were interposed at the trial, this point can ordinarily not be raised on review. (*People* v. *Kemp*, 396 Ill. 578.) Defendant, however, contends that under Rule 25 of this court substantial defects in instructions are not waived by failure to make timely objections thereto if the interest of justice so requires. Specifically, two instructions are now called to our attention. The one instruction defines the crime of burglary in the language of the statute. The other instruction is as follows: "The Court instructs the jury as a matter of law, that to constitute the crime of burglary as charged in the indictment it must be shown that the defendant broke and entered the building alleged to have been burglarized with the intent to commit larceny. But direct testimony is not necessary to prove that intent. If the jury believe beyond a reasonable doubt that the intent charged in the indictment is shown by the facts and circumstances in evidence that is sufficient proof of such intent." We disagree with defendant's contention that the instructions assume that the defendant committed the crime. Instructions such as those given have been approved by this court where as here the defendant denied commission of the offense. *People* v. *Everett*, 242 Ill. 628; *People* v. *Lawson*, 328 Ill. 602.

No reversible error appearing in the record of this case, the judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*