People of the State of Illinois, Plaintiff-Appellee, v. Herman Davis and Lee Hayden (Impleaded), Defendants-Appellants.

Gen. Nos. 53,849–54,000. (Consolidated.)

First District, Fourth Division.

December 17, 1969.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Herbert Becker, Norman W. Fishman, and James J. Doherty, Assistant Public Defenders, of counsel), for appellants.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Richard Zulkey, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE ENGLISH delivered the opinion of the court.

OFFENSE CHARGED
Burglary. Ill Rev Stats 1967, c 38, § 19–1.

JUDGMENT

After a trial by jury, defendants were found guilty of burglary and sentenced to terms of 3 to 5 years (Hayden) and 2 to 3 years (Davis).

CONTENTIONS RAISED ON APPEAL

1. The State failed to prove all the material allegations of the indictment, and the court erred in permitting additional testimony after both sides had rested their cases.

2. Defendants were not proven guilty beyond a reasonable doubt.

EVIDENCE

Bahij Abdallah, for the State:

He is a partner with three of his cousins in a grocery store business, known as Jack's Food Mart, located at 1435 West 69th Street, Chicago. On Saturday, April 6, 1968, he closed the store at 11:00 a. m., locking both front and back doors. He returned at 9:00 a. m. on April 8 and saw that the back door had been broken in and all the merchandise from the stock room and back room had been taken out, with the meat cases thrown on the floor. The following were missing: $1,000 in currency, $300 worth of food stamps, $1,000 worth of meat, $1,700 worth of groceries, drugs and sundries, and $100 worth of butcher equipment. Some of the merchandise, amounting to $250 in value, was recovered by the police.

Frank Cacucci, for the State:

On April 8, 1968, he was a youth officer with the Chicago Police Department, and was patrolling with Officers Luke, O'Connor, and Fialla. They were directed by radio at 12:30 a. m. to investigate a burglary at Jack's Food Store. He observed five persons, including defendant Hayden, "alighting from the rear of the store." They were running and, when they refused to stop, a warning shot was fired. Three of the five were

immediately taken into custody, including Hayden. Another man, defendant Davis, was pulled out from underneath a car and arrested also. The witness had not seen Davis in the store. At the scene, he observed a sledge hammer up against the bent back door and two automobiles containing cigarettes, groceries, fresh meats, and paper bags.

James O'Connor, for the State:

He also was a police youth officer. At about 12:30 a. m. on April 8, 1968, he observed figures in Jack's Food Store who fled to the rear of the store. They drove the squad car to the rear and saw five figures fleeing from the store. Three stopped when the warning shot was fired, and were arrested, among them defendant Hayden. One of the two who continued running fired back two shots, and the police fired four shots in return, but they got away. There were two cars at the rear of the store, a Mustang and a Chevrolet station wagon, both loaded with cigarettes, meat, and toiletry articles. Although it was nighttime, the lighting produced by the street lights was fair.

Robert Luke, for the State:

He also was a youth officer on the date of the occurrence. He saw both defendants after they had been put in custody; otherwise, his testimony was in general corroboration of that of the other officers.

Herman Davis, on his own behalf:

He had been playing pool until 12:00 or 12:30 a. m. on April 8, 1968, and was walking home when he heard lots of noise near 69th and Bishop. He proceeded toward the area from which the noise was coming, to see what was "going on." He saw looting going on in the store and heard someone in there say, "Hurry up." He just "glanced around," saw that somebody had put stuff in the car trunk, and then police jumped out, said "police," and started shooting. He dived to the ground

and crawled under a station wagon. The police found him with a flashlight and pulled him out.

He had been with defendant Hayden that night at the poolroom and walked with him to the store. He was never in the store. He next saw Hayden at the police station.

Lee Hayden, on his own behalf:

He was employed as a bellman at the Seneca Hotel on the date in question. He was with Herman Davis at a poolroom during the evening, and they left together. He was going to work. When they reached the store, he followed Davis to the end of the building, when the police appeared, started shooting, and eventually arrested him.

He was never in Jack's Food Store. The people were in the store when he was arrested and he did not know any of them except Davis. Since the arrest, he saw Davis only once, and that was in court.

OPINION

■ Defendants first contend that the State failed to prove all the material allegations of the indictment since there was inadequate proof of the complete ownership of Jack's Food Market. The parties agree that it was necessary to establish ownership to support a conviction for burglary. People v. Jamison, 92 Ill App2d 28, 235 NE2d 849. Bahij Abdallah testified that "we have a grocery store," identifying "we" as "four cousins (he and three others) and all partners in that same location." After all witnesses had testified and both sides had rested their cases, defendants' attorney informed the court that the State had failed to prove its case by not showing the names of all the partners of Jack's Food Mart. After hearing argument of counsel, the court, over defense objection, gave leave to the State to reopen its case for the sole purpose of

showing who the three cousins were. Bahij Abdallah then took the stand and named his partners.

■■ Defendants argue that by permitting this additional testimony, the court abused its discretion and deprived defendants of a fair trial. Both parties have noted in their briefs that permission to introduce additional testimony after a party has rested its case is "altogether a matter of discretion." City of Sandwich v. Dolan, 141 Ill 430, 441, 31 NE 416; People v. Franceschini, 20 Ill2d 126, 169 NE2d 244. In a recent case substantially similar on its facts, People v. Cross, 40 Ill2d 85, 90, 237 NE2d 437 the court stated:

> Proof of the corporate ownership was a formal matter and could not have taken the defendant by surprise. We find no prejudicial error in the ruling of the trial court permitting the reopening of the case.

In the instant case, that the State had inadvertently omitted proof of the partnership identity was evidenced by Abdallah's reference to his partners on initial direct examination, and his identification of them as his cousins. As in Cross, supra, the added proof supplying their names was merely a formality, and under these circumstances we find that the discretion exercised by the trial court was not abused.

Defendants contend further, however, that the effect of allowing such testimony is prejudicial when, as in the instant case, the trier of fact is a jury rather than a judge. See People v. Wiemers, 225 Ill 17, 80 NE 45. Although there are obvious differences existing between these two types of criminal trials, the distinction is without significance in the context of this case, and the argument advanced by defendants appears vacuous. It should be noted that Cross also involved a jury trial; yet the trial court was held to have been free of error

in reopening the case to permit further testimony of a similar nature.

 Defendants next contend they were not proven guilty beyond a reasonable doubt. This point, too, is without merit. Defendants, by their own testimony, were placed together at the scene of the crime, but have attempted to justify or explain their presence, while denying participation. They must tell a reasonable story or be judged by its improbabilities. People v. Davis, 27 Ill2d 33, at 37, 188 NE2d 43. In the instant case, three police officers also testified to defendants' presence, two of whom saw Hayden leaving the store. While Hayden testified that he was never in the store, it is not our function to resolve conflicts in the evidence. We will not substitute our judgment for that of the jury in determining credibility of the witnesses. We find, therefore, that the conviction as to Hayden should be affirmed.

Defendant Davis was not found nor seen within the building, yet he admitted that he and Hayden had been together all evening and that he had accompanied Hayden to the scene of the burglary. An analogous situation in People v. Clark, 30 Ill2d 67, 72, 195 NE2d 157 was treated in the following manner:

> While mere presence or negative acquiescence is not sufficient to constitute a person a principal to a crime, one may aid and abet without actively participating in the overt act, and if the proof shows he was present at the crime without disapproving or opposing it, the trier of fact may competently consider this conduct in connection with other circumstances and thereby reach a conclusion that such person assented to the commission of the criminal act, lent his countenance and approval, and was thereby aiding and abetting the crime.

See also People v. Nugara, 39 Ill2d 482, 236 NE2d 693. The circumstances surrounding Davis' arrest, including his accompanying Hayden and his hiding under one of the automobiles which was loaded with loot, constitute sufficient evidence to justify the jury's verdict.

 Defendants also claim that they were prejudiced by their in-court identification without having been identified at a pretrial lineup. This argument must fall in a case such as this where the defendants were arrested at the scene of the crime.

The judgments of the Circuit Court are affirmed.

Affirmed.

DRUCKER, P. J. and LEIGHTON, J., concur.