The People of the State of Illinois, Plaintiff-Appellee, *v.* Larry Mager, Defendant-Appellant.

Fifth District No. 74-271

Opinion filed January 21, 1976.

Paul Bradley and Gordon Berry, both of State Appellate Defender's Office, of Chicago, for appellant.

Robert H. Rice, State's Attorney, of Belleville (Robert L. Craig, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

This cause is an appeal from a judgment of conviction entered by the circuit court of St. Clair County, pursuant to a jury verdict against the defendant, Larry Mager, on an indictment for forgery under section 17—3(a)(3) of the Criminal Code (Ill. Rev. Stat., ch. 38, par. 17—3 (a)(3)).

A brief statement of the facts underlying this alleged crime are required for an understanding of the various points raised on this appeal. The defendant was taken into custody shortly after presenting a prescription to a Belleville pharmacy. It was uncontroverted at trial that the physician's signature appearing thereon was a forgery as was the prescription for the drug, an amphetamine, itself, although both signature and prescription were on a printed prescription blank. The prescription was made out to Jerry Leroy. It was also uncontroverted at trial that the defendant, when initially questioned about the prescription, stated that he was getting the prescription filled for Leroy, whom he had just left at Leroy's apartment. The defendant later admitted that he had lied about where he had received the prescription.

A true bill of indictment was returned by the St. Clair County Grand Jury which, in pertinent part, stated,

> "That on the 2nd day of April, 1973, in said county Larry Mager committed the offense of FORGERY in that he with intent to defraud did knowingly possess with intent to deliver to Harold Smith Pharmacy, Belleville, Illinois, a document apparently capable of defrauding another in that it purported to have been

made by another, Dr. Agustine V. Paredes, a copy of which document is attached to, incorporated in and made a part of this indictment by reference thereto, said document being a prescription the defendant knowing said document to have been thereby made, in violation of paragraph 17—3, Chapter 38, Illinois Revised Statutes."

The defendant was thereafter tried under section 17—3(a)(3) of the Illinois Criminal Code (Ill. Rev. Stat., ch. 38, par. 17—3(a)(3)) which provides in pertinent part:

"(a) A person commits forgery when, with intent to defraud, he knowingly:

\* \* \*

(3) Possesses, with intent to issue or deliver, any such document knowing it to have been thus made or altered."

The words "knowing it to have been thus made or altered" in subparagraph (a)(3) refer to subparagraph (a)(1) of section 17—3, which provides in pertinent part:

"(1) Makes or alters any document apparently capable of defrauding another in such manner that it purports to have been made by another \* \* \*." Ill. Rev. Stat. 1971, ch. 38, par. 17—3(a)(1).

It is defendant-appellant's contention on this appeal that this indictment, on which defendant was convicted, failed to properly charge the offense of forgery. The insufficiency of the indictment is contended on the ground that it failed to allege the distinctive mental state required in subparagraph (a)(3) of this statute, i.e., that the defendant knew the prescription bore a forged signature.

■■ As we held in *People v. Pruden*, 25 Ill.App.3d 47, 49, 322 N.E.2d 501:

"The test of sufficiency of an indictment is whether it: (1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant to enable him to prepare a defense, and (3) would sustain a plea of acquittal or conviction in bar of any further prosecutions of the same. offense. *People v. Harvey*, 53 Ill.2d 585, 294 N.E.2d 269; *People v. Grieco*, 44 Ill.2d 407, 255 N.E.2d 897; *People v. Rife* (Fourth Dist. 1974), 18 Ill. App.3d 602, 310 N.E.2d 179."

Where the statutory definition of an offense includes the mental state with which the act is committed as an element of the offense, as is the instant case where the defendant's knowledge that the signature was forged is required, that knowledge or mental state must be alleged in the indictment. (*People v. Edge*, 406 Ill. 490, 493-94, 94 N.E.2d 359;

*People v. Stafford*, 4 Ill.App.3d 606, 609, 279 N.E.2d 395.) Where the mental state is not alleged, the indictment is fatally defective since it does not contain all the elements of the offense intended to be charged. While it cannot be denied that the indictment in the instant case was inartfully and carelessly drawn, we do not agree with the defendant-appellant that it is fatally defective. The indictment alleged that the prescription was "* * * apparently capable of defrauding another in that it purported to have been made by another * * *," *i.e.*, that the prescription bore a forged signature. The indictment also alleged that the defendant committed the requisite acts, "* * * knowing said document to have been thereby made * * *," *i.e.*, knowing the prescription was made by one other than the person whose purported signature appeared on the prescription. There is, therefore, a sufficient reference in this last quoted clause of the indictment by use of the word "thereby" to that clause of the indictment alleging that the instrument was, in fact, forged to sustain the indictment.

The defendant-appellant's second argument on this appeal is that the State's Attorney failed to prove beyond a reasonable doubt that the defendant knew the prescription he attempted to fill bore a forged physician's signature.

At trial the defendant admitted that he had lied to the police officers when taken into custody. He first said that he had received the prescription from Jerry Leroy at an apartment in Belleville. He later stated, and steadfastly maintains, that he received the prescription from Leroy at his own house after Leroy requested that he get the prescription filled. The defendant also maintains that at no time did Leroy indicate to him that the physician's signature thereon was a forgery. Although at no time did the defendant testify that he, in fact, did not know of the forgery, that is the clear inference from the record. Jerry Leroy testified that he had never seen the prescription and had never gone to the defendant's house for the purpose of having the defendant get a prescription filled for him.

■■ Clearly, it must be proved beyond a reasonable doubt that the defendant knew that the instrument was forged for a conviction to stand. (*People v. Cohen*, 343 Ill. 437, 442, 175 N.E. 559; *People v. Baylor*, 25 Ill.App.3d 1070, 1072, 324 N.E.2d 255.) However, it is also clearly the rule, as the Illinois Supreme Court said in *People v. Zuniga*, 53 Ill.2d 550, 559, 293 N.E.2d 595, that:

"It is the jury's province to draw inferences from the evidence and to determine the credibility of the witnesses and the weight to be given to their testimony. (*People v. Lee*, 48 Ill.2d 272; *People v. Nicholls*, 44 Ill.2d 533.)"

Likewise, as the Illinois Supreme Court held in *People v. Kelley,* 29 Ill. 2d 53, 58-59, 193 N.E.2d 21:

> "Where the evidence in a criminal case is heard by a jury, this court will not disturb a verdict of guilty unless the evidence is so palpably contrary to the verdict or so unreasonable, improbable, and unsatisfactory as to justify this court in entertaining reasonable doubt as to the defendant's guilt. (*People v. Sustak,* 15 Ill.2d 115, 123.)"

See also for this same proposition *People v. Zuniga,* 53 Ill.2d 550, 559. ▮▮ Here the defendant's testimony is directly contrary to the testimony of Leroy. The credibility of the defendant's testimony is also suspect due to the initial lie he admittedly made to the police. The Supreme Court of Illinois held in *People v. Davis,* 27 Ill.2d 33, 37, 188 N.E.2d 43, that:

> "When a defendant elects to justify or explain his presence at or near the scene of a crime, while denying participation, he must tell a reasonable story or be judged by its improbabilities. (*People v. Spagnolia,* 21 Ill.2d 455.) Apparently the jury here did not believe the defendant's explanation * * * but, instead, chose to accept the above testimony of the [other witnesses]."

The defendant's version of the facts concerning his receipt of the prescription, including his alleged lack of knowledge of the forgery thereon, is improbable and unreasonable in light of Leroy's direct testimony to the contrary; and the jury, as the trier of fact, was entitled to believe Leroy and not the defendant.

The determination of this question of whether, beyond a reasonable doubt, the defendant knew of the forged signature on the prescription is, however, inextricably tied to the question of Jerry Leroy's credibility as a witness and herein lies the crux of this appeal. Leroy was called as a witness by the defendant. He testified, as has been discussed, that he had never seen the forged prescription. He also testified that he had never requested the defendant to get a prescription filled for him. This testimony, however, was immediately followed by an attempt on the part of counsel for the defendant to impeach these statements. After the trial court sustained an objection to such impeachment, a purported offer of proof was made by defense counsel outside the hearing of the jury. Defense counsel told the court that earlier that day Leroy "indicated" that he had given the defendant the prescription, had asked the defendant to get it filled, and had not told the defendant of the forgery. The court then ruled that defense counsel could not examine Leroy as a hostile witness. Subsequently, counsel for the defense called defendant's wife and asked her about the conversation he and Leroy had had

that morning. The court sustained the State's objection to such questions. When defense counsel, likewise, asked the defendant about that conversation, the court sustained the State's objection.

Supreme Court Rule 238 provides that:

> "If the court determines that a witness is hostile or unwilling, he may be examined by the party calling him as if under cross-examination. The party calling an occurrence witness upon the showing that he called the witness in good faith and is surprised by his testimony, may impeach the witness by proof of prior inconsistent statements." (Ill. Rev. Stat., ch. 110A, par. 238.)

As we have held in *People v. Shanklin*, 26 Ill.App.3d 167, 171, 324 N.E. 2d 711, citing and quoting *People v. Collins*, 25 Ill.2d 605, 186 N.E.2d 30:

> "Whether a party can call a witness as a hostile witness and cross-examine him is a matter addressed to the sound discretion of the trial court."

Here, however, there can be no question that Leroy was unwilling to testify. The trial court, in fact, had to order him to answer after his flat refusal to do so. Likewise, the record and the purported offer of proof, although technically deficient, demonstrate that defense counsel was surprised by Leroy's testimony after the court ordered him to answer.

In *People v. Wesley*, 18 Ill.2d 138, 150-51, 163 N.E.2d 500, the Illinois Supreme Court discussed the perimeters of this doctrine and said:

> "It is a general rule that a party who calls a witness to testify cannot directly impeach his testimony, but certain exceptions indicate that the rule may be in the process of erosion. Thus, where the witness unexpectedly gives testimony against the party calling him, such party has the right of examination to show that the witness gave surprise testimony and to specifically call his attention to former inconsistent statements made by him for the purpose of refreshing his memory or awakening his conscience to the end that he may relent and speak the truth if he is lying. *People v. Michaels*, 335 Ill. 590; *People v. O'Gara*, 271 Ill. 138."

The Illinois Supreme Court has also addressed this question in the case of *People v. Marino*, 44 Ill.2d 562, 577-78, 256 N.E.2d 770. There it was held:

> "* * * it became apparent that his [the witness'] testimony at the trial would differ materially from statements he made earlier before the grand jury, at a preliminary hearing, and to the assistant State's Attorney. These prior inconsistent statements were brought forth in bold relief during the State's cross-examination of Sgt. Prokop. * * * Here the trial court specifically admonished the jury during the State's cross-examination of Sgt. Prokop

that prior inconsistent statements made by such witness were to be used only for the purpose of determining his credibility and not as proof of the assertions therein made. In addition, the impeaching statements were largely germane to the issues in the case. \* \* \* [Under] the circumstances present at the trial, we do not believe that the State's cross-examination of. Prokop constitutes reversible error. See *People v. Rotello*, 339 Ill. 448; *United States v. Browne*, (2d cir., 1963), 313 F.2d 197,) annotation appearing in 65 A.L.R. 538 at pp. 553-555."

See also for this proposition, *People v. Quevreaux*, 407 Ill. 176, 182-83, 95 N.E. 62; *People v. Macias*, 39 Ill.2d 208, 212, 234 N.E.2d 783; *People v. Rongetti*, 344 Ill. 278, 284, 176 N.E. 298.

■■ On the trial of this cause the testimony of Leroy was largely germane to the issue of the defendant's alleged knowledge of the forgery; in fact, Leroy's name appeared on the forged prescription. This fact, coupled with Leroy's unwillingness to testify and defense counsel's surprise, made it an abuse of the trial court's discretion not to allow counsel for the defense to *specifically* call Leroy's attention to prior inconsistent statements made by him bearing on that issue, with, of course, the proper cautions to the jury concerning their nonapplicability as substantive evidence. The trial court's failure to allow defense counsel to do so constitutes reversible error. (*People v. Mostafa*, 5 Ill.App.3d 158, 276 N.E.2d 846.) Without such opportunity to confront Leroy, the defendant was deprived of the only means by which he could have established his defense. Plainly, this was a manifest injustice.

■■ This ruling is not to say, however, that the trial court erred in refusing to allow counsel for defendant to introduce evidence from defendant and defendant's wife that Leroy had made prior inconsistent statements concerning delivery of the forged prescription and defendant's knowledge of the forgery. The surprised party may impeach his witness by the use of the specific prior inconsistent statements but, as has been held in *Schoolfield v. Witkowski*, 54 Ill.App.2d 111, 121-22, 203 N.E.2d 460, relying on *People v. Michaels*, 335 Ill. 590, 592-593, 167 N.E. 857:

"This, however, is as far as the party may go, and under no circumstances may he show, either by the written statement of the witness *or by other witnesses*, that the witness did, in fact, make those statements. McCray v. Illinois Cent. R. Co., 12 Ill.App. 2d 425, 139 N.E.2d 817; People v. Michaels, 335 Ill. 590, 167 N.E. 857." (Emphasis supplied.)

The final matter argued by defendant-appellant on this appeal con-

cerns the trial court's denial of defendant's post-trial motion for probation. We consider it unnecessary to consider this issue in view of our conclusion that the defendant is entitled to a new trial.

Accordingly, we remand this cause for further proceedings not inconsistent with this opinion.

Reversed and remanded.

G. J. MORAN and JONES, JJ., concur.